**BRIGHTPOINT, INC. and Brightpoint Europe A/S, Appellants–Plaintiffs,**

v.

**Steen F. PEDERSEN, Appellee–Defendant.**

No. 49A02–0912–CV–1196.

Court of Appeals of Indiana.

June 30, 2010.

Robert F. Wagner, A. Richard M. Blaiklock, Anthony M. Eleftheri, Lewis Wagner, LLP, Indianapolis, IN, Attorneys for Appellants.

Scott S. Morrisson, Linda J. Cooley, Krieg DeVault, LLP, Carmel, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

## STATEMENT OF THE CASE

Brightpoint, Inc. ("Brightpoint"), an Indiana corporation, and Brightpoint Europe A/S ("BPE"), a Danish corporation and wholly owned subsidiary of Brightpoint, appeal the trial court's dismissal of their complaint against Steen F. Pedersen, a Danish citizen. Brightpoint and BPE raise three issues for our review,[1] which we restate as the following two issues:

1. Whether the trial court abused its discretion when it denied Brightpoint and BPE's joint Motion to Strike; and

2. Whether the trial court abused its discretion when it dismissed Brightpoint and BPE's complaint out of comity to a substantially similar action filed by Pedersen against BPE pending in the Danish court system.

We hold that the trial court did not abuse its discretion when it denied Brightpoint and BPE's Motion to Strike. We also hold that the trial court did not abuse its discretion in dismissing the complaint on the basis of comity.[2] Accordingly, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

Brightpoint, an Indiana corporation with its principal place of business in Indianapolis, is a global leader in the distribution of wireless devices and accessories with operation centers, sales offices, and subsidiaries around the world. Between at least 2001 and 2007, Dangaard Telecom, a Danish corporation with its principal place of business in the Kingdom of Denmark, was a leading distributor of wireless devices and accessories throughout Europe. Pedersen founded Dangaard Telecom and served as its CEO for about 25 years.

On July 31, 2006, Pedersen entered into an "Executive Agreement" with Dangaard Holding A/S, the then-parent company of Dangaard Telecom. Pursuant to the Executive Agreement, Pedersen agreed to maintain company secrets and to not disclose any information to third parties learned by virtue of his position with Dangaard Telecom. Pedersen also agreed to a provision that prohibited him from competing with Dangaard Telecom for two years following the conclusion of his employment. In February of 2007, Pedersen and Dangaard Holding A/S signed an Addendum to the Executive Agreement. The Addendum stated that the parties expected Brightpoint to buy Dangaard Telecom and that, upon completion of the acquisition, "the Executive Agreement will automatically be assigned by [Dangaard Holding A/S] to Dangaard Telecom . . . ." Appellants' App. at 66.

In June and July of 2007, Brightpoint and Dangaard Telecom began discussing merger proposals. Pedersen represented Dangaard Telecom in those discussions, which twice brought him to Indiana to meet with Brightpoint officials and executives. On July 31, 2007, the companies agreed, among other things, that Brightpoint would purchase Dangaard Telecom,

---

1. We agree with Pedersen that Brightpoint and BPE's Statement of the Issues in their Appellants' Brief fails to "concisely and particularly describe each issue presented for review." Ind. Appellate Rule 46(A)(4). We also agree with Pedersen that Brightpoint and BPE's Statement of the Case "impermissibly advances argument." Appellee's Br. at 2.

2. Because we hold that the trial court did not abuse its discretion in dismissing the complaint on the basis of comity, we need not consider Brightpoint and BPE's additional argument that the trial court erroneously concluded that it lacked personal jurisdiction over Pedersen.

that Dangaard Telecom would change its name to BPE, and that Pedersen would change titles from CEO of Dangaard Telecom to "President Europe" of BPE. *See id.* at 19. BPE was to remain a Danish corporation with its principal place of business in Denmark.

Less than one year after Brightpoint's acquisition of Dangaard Telecom, Pedersen announced his resignation from BPE. Thereafter, Pedersen and BPE entered into a Settlement Agreement. Pursuant to that agreement, Pedersen was to receive severance payments and certain benefits for a period of time extending past November 19, 2008, the effective date of Pedersen's resignation. Those payments were to be made to Pedersen by BPE, but Brightpoint also signed the Settlement Agreement "for the sole purpose of guaranteeing the amounts payable" to Pedersen. *Id.* at 109. In exchange for the payments and benefits, Pedersen was to return all confidential materials and equipment to BPE and continue to be bound by the confidentiality and noncompetition clauses of the Executive Agreement.

On March 23, 2009, Pedersen filed a Letter of Complaint against BPE in a Danish Arbitration Court. In that complaint, Pedersen alleged that BPE had failed to pay him in accordance with the Settlement Agreement and, therefore, BPE had breached the terms of that agreement. On May 1, BPE filed the equivalent of an answer. In its filing, BPE asserted that "[t]he non-payment ... to [Pedersen] is due to [his] material breach of the Settlement Agreement, including the provisions concerning confidentiality and competition set out in the Settlement Agreement, relating to the period after [Pedersen's] resignation...." *Id.* at 178. Specifically, BPE alleged that Pedersen had improperly done business with other Danish businesses. BPE then "sub-

mit[ted] that the case be dismissed in ... light of the fact that no arbitration clause was agreed upon [in the Settlement Agreement]. The proper venue for settling this dispute will therefore be an [ ] ordinary court of law." *Id.* at 179. In light of BPE's apparent concession to suit in court, on May 12 Pedersen withdrew his claim for arbitration and on May 13 he filed a complaint against BPE in the Danish court system.

Meanwhile, on April 28 Brightpoint and BPE jointly filed suit against Pedersen in the Marion Superior Court. This was unknown to Pedersen at the time he withdrew his complaint for arbitration and immediately refiled in the Danish court, however, since BPE made no mention of the Indiana filing in its May 1 answer to Pedersen's claim in the Danish Arbitration Court and since Brightpoint and BPE did not serve him with notice of the Indiana filing until August 2. In their complaint, Brightpoint and BPE sought damages against Pedersen on the following grounds: (1) breach of the confidentiality and competition provisions of the Executive Agreement and the Settlement Agreement; (2) breach of fiduciary duties; (3) tortious interference with a contract; (4) common law unfair competition; (5) misappropriation of trade secrets under common law and Indiana's Uniform Trade Secrets Act; and (6) violation of the Danish Trademark Act and European Union Trademark Regulations. Each of those six allegations was based on Pedersen's alleged dealings, in Europe, with other Danish businesses. Those alleged dealings also formed the basis of BPE's defense against Pedersen's complaint in the Danish court system.

On August 24, Pedersen filed in the Marion Superior Court a Motion to Dismiss Brightpoint and BPE's complaint. In his motion, Pedersen asserted that a sub-

stantially similar action was pending in the Danish court system and that the Marion Superior Court lacked personal jurisdiction over him. Pedersen also attached his affidavit to his motion. On October 7, Brightpoint and BPE filed their Response to Pedersen's motion. Brightpoint and BPE attached two affidavits and numerous exhibits to their Response. On October 16, Pedersen submitted his Reply, to which he attached his amended affidavit as well as other affidavits and exhibits.

On October 19, Brightpoint and BPE filed a Motion to Strike Improper Evidence Submitted on Reply. On October 20, the trial court held a hearing on the Motion to Dismiss and the Motion to Strike. At that hearing, Brightpoint and BPE discussed various e-mails, not previously produced, in support of their argument for personal jurisdiction. Following the hearing, Pedersen filed a Response to the Motion to Strike, and Brightpoint and BPE filed a Reply.

On November 19, 2009, the trial court denied Brightpoint and BPE's Motion to Strike. The court then granted Pedersen's Motion to Dismiss both out of comity to the pending Danish litigation[3] and due to a lack of personal jurisdiction over Pedersen. On the issue of comity, the trial court stated as follows:

> The Court finds that this case should be dismissed pursuant to the doctrine of comity in favor of the pending litigation in Denmark.... Application of comity to this case promotes uniformity of decision and reduces the potential for inconsistent and repeated litigation of the same question. The Court takes such action out of deference and in the interest of good will to the courts of Denmark. The Danish litigation is proceeding normally, is not subject to any undue delay, and to the extent comity requires that the [Danish] litigation be first filed, the Court finds that the initial arbitration filing and subsequent court filing in Denmark by [Pedersen] satisfies the first[-]filed factor. The Court further finds in the interests of comity that the Danish litigation was validly instituted and that the allegations and issues in the Danish litigation and this Indiana litigation are at least substantially the same. Lastly, this Court finds that Indiana does recognize the doctrine of comity with respect to proceedings pending not just in sister states of the United States [ ] but also to proceedings pending in foreign countries such as Denmark. The Court reaches these conclusions as a matter of its judicial discretion.

*Id.* at 6–7. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Motion to Strike

■■■ Brightpoint and BPE first contend that the trial court abused its discretion when it denied their Motion to Strike and considered the affidavits and exhibits attached to Pedersen's Reply in support of his Motion to Dismiss. The admission and exclusion of evidence falls within the sound discretion of the trial court, and this court reviews those decisions only for an abuse of that discretion. *See Wilson v. State,* 765 N.E.2d 1265, 1272 (Ind.2002). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Carpenter v. State,* 786 N.E.2d 696, 702–03 (Ind.2003). When we review for an abuse of discretion, we do not reweigh the evidence. *K.S. v. Marion County Dep't of Child Servs.,* 917 N.E.2d 158, 162 (Ind.Ct.App.2009).

---

**3.** BPE has filed a motion to stay the proceedings pending before the Danish court.

■ Here, Brightpoint and BPE argue that "it is improper for a party to raise issues for the first time in a Reply Brief" and that an "argument raised for the first time in a reply brief is waived." Appellants' Br. at 39. We have no quarrel with those propositions as they relate to new arguments raised for the first time in a Reply Brief. But that is not what happened here. Rather, the evidence submitted by Pedersen in his Reply to the Motion to Dismiss was in direct response to Brightpoint and BPE's arguments and evidence submitted in their Response to Pedersen's Motion. That is most certainly a legitimate use of a Reply. *E.g.*, Ind. Appellate Rule 46(C) ("The appellant may file a reply brief responding to the appellee's argument. No new issues shall be raised in the reply brief"). Further, Brightpoint and BPE were afforded an opportunity to present contrary evidence and arguments—which they did—to Pedersen's Reply at the subsequent hearing on the pending motions. As such, the trial court did not abuse its discretion in denying Brightpoint and BPE's Motion to Strike.[4]

### Issue Two: Comity

■ Brightpoint and BPE also assert that the trial court erroneously granted Pedersen's Motion to Dismiss out of comity to the pending Danish litigation. As this court has recognized:

> Comity and forum non conveniens are not synonymous terms or doctrines. Under principles of comity, Indiana courts may respect final decisions of sister courts as well as proceedings pending in those courts. *See George S. May Int'l Co. v. King*, 629 N.E.2d 257, 260 (Ind.Ct.App.1994), *trans. denied.* Comi-

ty is not a constitutional requirement to give full faith and credit to the law of a sister state, but it is a rule of convenience and courtesy. *County of Ventura v. Neice*, 434 N.E.2d 907, 910 (Ind.Ct. App.1982). Moreover, Indiana courts have described comity as representing " 'a willingness to grant a privilege, not as a matter of right, but out of deference and good will. Its primary value is to promote uniformity of decision by discouraging repeated litigation of the same question.' " *Id.* (quoting *Florida ex rel. O'Malley v. Dept. of Ins. of the State of Ind.*, 155 Ind.App. 168, 176–77, 291 N.E.2d 907, 912 (1973)).

*Am. Econ. Ins. Co. v. Felts*, 759 N.E.2d 649, 660 (Ind.Ct.App.2001). It is within the trial court's discretion to dismiss an action out of comity. *See id.* at 661. Again, an abuse of discretion occurs only when the trial court's judgment is against the logic and effects of the facts and circumstances before it, and we will not reweigh the evidence most favorable to that judgment. *See Carpenter*, 786 N.E.2d at 702–03; *K.S.*, 917 N.E.2d at 162.

The parties in this appeal agree that recent statements on comity by this court are instructive. *See Jallali v. Nat'l Bd. of Osteopathic Med. Exam'rs, Inc.*, 902 N.E.2d 902 (Ind.Ct.App.2009), *vacated on other grounds on reh'g*, 908 N.E.2d 1168, *trans. denied.* While that opinion was vacated on rehearing upon the submission of evidence that rendered the discussion on comity moot, we nonetheless agree with our colleagues' original discussion on the law of comity:

> Courts in other jurisdictions likewise have concluded that where an action

---

4. Brightpoint and BPE also suggest that Pedersen's amended affidavit—submitted with his Reply—contradicted the affidavit he submitted with his Motion to Dismiss. It was for the trial court to consider and resolve any pur-

ported contradictions in Pedersen's testimony in deciding the various motions, and we will not reconsider Pedersen's credibility on appeal. *See K.S.*, 917 N.E.2d at 162.

concerning the same parties and the same subject matter has been commenced in another jurisdiction capable of granting prompt and complete justice, comity ordinarily should require staying or dismissal of a subsequent action filed in a different jurisdiction, in the absence of special circumstances. *See McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng'g Co.,* 263 A.2d 281, 283 (Del. 1970); *American Home Products Corp. v. Adriatic Ins. Co.,* 286 N.J.Super. 24, 668 A.2d 67, 72 (N.J.Super.Ct.App.Div.1995).

Factors this court has considered in addressing comity questions include whether the first filed suit has been proceeding normally, without delay, and whether there is a danger the parties may be subjected to multiple or inconsistent judgments. *See Hexter v. Hexter,* 179 Ind.App. 638, 640, 386 N.E.2d 1006, 1008 (1979). We also believe it appropriate to look for guidance from cases interpreting Indiana Trial Rule 12(B)(8), which expressly permits dismissal of a lawsuit where another action already is pending in another *Indiana* state court. Under that rule, a second action "should be dismissed where the parties, subject matter, and remedies are precisely or even substantially the same in both suits." *Vannatta v. Chandler,* 810 N.E.2d 1108, 1110–11 (Ind.Ct.App.2004).

*Id.* at 906 (emphasis original; footnote omitted).

In light of the various "[f]actors this court has considered in addressing comity questions," *id.,* Brightpoint and BPE argue each of the following: (1) that the Danish litigation and the instant suit do not involve the same parties; (2) that the Danish litigation and the instant suit do not involve substantially identical subject matter; (3) that the two proceedings seek different remedies; and (4) that the Dan-

ish litigation was not filed first. Brightpoint and BPE do not question the trial court's express finding that the Danish litigation is proceeding normally and without delay. We address each of the contentions in turn.

Brightpoint and BPE first assert that, because Brightpoint is a party to the Indiana litigation but not to the Danish litigation, the two proceedings do not involve the same parties. We cannot agree. As this court recently noted in discussing Indiana Trial Rule 12(B)(8), while "each action contained other parties, ... the presence of those other parties was irrelevant to the Trial Rule 12(B)(8) requirement that each action contain the same parties." *Beatty v. Liberty Mut. Ins. Group,* 893 N.E.2d 1079, 1086 (Ind.Ct.App. 2008) (discussing *Crawfordsville Apartment Co. v. Key Trust Co.,* 692 N.E.2d 478, 480 (Ind.Ct.App.1998)). Likewise, here, the fact that Brightpoint is a named party along with BPE in the Indiana litigation does not preclude operation of the rule of comity. *See id.; see also Jallali,* 902 N.E.2d at 906 (stating that reliance on Trial Rule 12(B)(8) is appropriate for determining whether comity should be applied).

Second, Brightpoint and BPE argue that the Danish litigation and the Indiana litigation do not involve substantially identical subject matter. Specifically, Brightpoint and BPE contend that "the Indiana litigation is more complex, involving additional claims not otherwise asserted in the Danish action." Appellants' Br. at 26. But while the allegations in the two courts are not identical, as in *Beatty* and *Crawfordsville Apartment* there is "clear and substantial overlap in the subject matter." *Beatty,* 893 N.E.2d at 1087. Brightpoint and BPE's allegations against Pedersen in Indiana are based in substantial part on his alleged dealings with other

Danish companies in violation of the Executive Agreement and the Settlement Agreement. Likewise, BPE's defense to Pedersen's allegations in the Danish litigation are based on those same alleged dealings. A finding by either the Danish court or the Marion Superior Court on the questions surrounding Pedersen's alleged dealings would affect the other court's proceedings. *See id.* As with Trial Rule 12(B)(8), application of the rule of comity is intended, among other things, "to avoid the risk of conflicting judgments or other confusion that can result from two courts exercising simultaneous jurisdiction over the same or substantially same action." *Id.; see also Jallali*, 902 N.E.2d at 906. As such, we cannot say that comity was improperly applied in light of the subject matter of the two litigations.

■ Next, Brightpoint and BPE maintain that comity ought not be applied to the Indiana litigation because they are "seeking, among other things, injunctive relief, in addition to compensatory and punitive damages, remedies unavailable in the Danish litigation." Appellants' Br. at 28. But Brightpoint and BPE immediately retreat from that assertion, noting instead that "it is unclear whether injunctive relief would be available . . . in the Danish litigation," and then abandoning altogether their assertion that compensatory damages are not available. *Id; see* App. R. 46(A)(8). Insofar as Brightpoint and BPE are asking this court to reweigh the evidence on whether injunctive relief is available in a Danish court, we will not do so. *See K.S.*, 917 N.E.2d at 162. Further, we are not persuaded that a foreign jurisdiction's prohibition or limitation on an award for punitive damages is, without more, enough to defeat application of the rule of comity.

■ Last, Brightpoint and BPE contend that Pedersen's litigation before the Danish court was not the first-filed litigation and, instead, their Indiana litigation was first filed. But in light of the facts presented to the trial court, we cannot say that the court's conclusion that Pedersen filed first, in Denmark, was an abuse of discretion. Pedersen filed his arbitration action against BPE on March 23, 2009. On May 1, BPE filed its response, asserting, among other things, that the proper venue for Pedersen's action was the Danish court system. Accordingly, on May 12, Pedersen withdrew his arbitration action and immediately refiled that claim on May 13 in the Danish court system. Meanwhile, on April 28, Brightpoint and BPE filed their substantially similar action in Indiana, although they did not give notice of that action to Pedersen until August 2. It was not against the logic and effect of those facts and circumstances for the trial court to consider Pedersen's March 23 arbitration filing the date of first filing. Thus, we cannot say that the trial court abused its discretion on this issue.

In sum, none of the four issues raised by Brightpoint and BPE demonstrate an erroneous determination by the trial court or an abuse of discretion in the court's application of the rule of comity. The Indiana litigation and the Danish litigation involve the same parties, substantially identical subject matter, and substantially similar remedies. Additionally, it was within the court's discretion to consider the Danish litigation the first-filed action. As such, we cannot say that the trial court abused its discretion when it granted Pedersen's Motion to Dismiss based on comity.

### Conclusion

The trial court did not abuse its discretion when it denied Brightpoint and BPE's Motion to Strike. Neither did the court abuse its discretion when it granted Peder-

sen's Motion to Dismiss. We, therefore, affirm the trial court's judgment.

Affirmed.

MATHIAS, J., and BROWN, J., concur.